UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Edwin Molinari

v.

Civil No. 25-cv-339-SE-TSM
Opinion No. 2026 DNH 130

New England Horsemen's Benevolent
And Protective Association, Inc.

ORDER

Pro se plaintiff Edwin Molinari, a disabled jockey, brings suit against the New England Horsemen's Benevolent and Protective Association, Inc. (NEHBPA), a nonprofit organization that represents thoroughbred racing owners and trainers, seeking damages for emotional distress. Molinari alleges that the NEHBPA caused his emotional distress by conspiring with the Massachusetts Gaming Commission and Jockeys' Guild, Inc., a nonprofit organization that represents jockeys, to deprive him of money owed to him from his on-track injuries. The NEHBPA moves to dismiss. Doc. no. 5. Molinari objects.

Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a

cause of action.'" Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations and then determine if the claim is plausible. See id. The court liberally construes Molinari's pleadings in light of his pro se status. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background

In this case, Molinari seeks to recover funds that he alleges he was eligible to receive but did not receive as a disabled jockey under a Massachusetts statute, M.G.L. c 23K, § 60. Molinari previously sued the Gaming Commission in Massachusetts state court seeking to recover the funds, as well as damages for emotional distress. He filed a separate suit against the Jockeys' Guild in the United States District Court for the District of Massachusetts seeking similar relief. Both cases were dismissed. See Molinari v. Jockeys' Guild, Inc., No. 1:24-CV-12293-JEK, 2025 WL 2163874 (D. Mass. July 30, 2025); doc. no. 5-3 (Massachusetts Superior Court's order dismissing Molinari's claims in Molinari v. Massachusetts Gaming Commission, No. 2484CV00870 (Mass. Super. Oct. 3, 2024)). The District Court Judge thoroughly explained the relevant statute's framework in Molinari's case against the Jockeys' Guild:

> M.G.L. c. 23K, § 60, provides for the creation of the Race Horse Development Fund ("RHDF"), which is funded by a portion of the taxes levied on gaming establishments in the Commonwealth. See id. § 60(a); id. § 55(c). RHDF funds must be "distributed between thoroughbred and standardbred racing facilities" to support the Commonwealth's horse racing industries. Id. § 60(b). A five-member "horse racing committee" is tasked with recommending how funds should be distributed between facilities, and its recommendations are subject to the "final approval" of the Massachusetts Gaming Commission. Id. Section 60(c) establishes the process for distributing Commission-approved funds. As relevant here, 4% of the distributed funds must be deposited into a bank account held by the horsemen's organization representing the owners and trainers at a given facility, and that amount must "be used to fund health and pension benefits" for

> that organization's members. Id. § 60(c)(iii). The designated horsemen's organization must, in turn, pay a portion of its disbursement to the jockeys' organization representing jockeys at the same racing facility. Id. Although the horsemen's organization makes this payment, it is the Gaming Commission that must "determine how much shall be paid annually . . . for health insurance, life insurance or other benefits to active and disabled thoroughbred jockeys." Id.

Jockeys' Guild, 2025 WL 2163874, at *1.

The NEHBPA "is a horsemen's organization that represents owners and trainers of thoroughbred racehorses." Id. at *2 (citing Art. III, § 1, Constitution and Bylaws, New England Horsemen's Benevolent and Protective Association (rev. June 7, 2019), https://perma.cc/EB22-G9YA). It does not represent jockeys like Molinari. Relevant to Molinari's claim, the NEHBPA is the "horsemen's organization" that should receive the "4% of the distributed funds" from the Gaming Commission under § 60. The statute then also requires the NEHBPA to pay to the Jockeys' Guild whatever portion of that 4% disbursement that the Commission determines "for health insurance, life insurance or other benefits." The Jockeys' Guild then uses its portion of the 4% disbursement to pay jockeys who are disabled as a result of an on-track accident, including Molinari, any benefits due. But the NEHBPA is only required to pay the Jockeys' Guild the amount that the Gaming Commission determines.

Molinari alleges that he did not receive any RHDF funds for several years prior to 2021 because the Gaming Commission "failed to comply with [§ 60] by not determining an amount for the Jockeys."[1] Doc. no. 1-2, ¶ 12. He alleges that the Gaming Commission's chair, Cathy Judd-Stein, admitted at two separate public meetings that the Gaming Commission erroneously withheld § 60 funds because it believed that the NEHBPA's insurance covered disabled jockeys

[1] Molinari alleged in his prior federal case that he did not receive funds from 2012-2019. See Jockeys' Guild, 2025 WL 2163874, at *2. He does not make a similar allegation in this case, but his complaint and the exhibits attached thereto make clear that he complains of funds that he did not receive at some point prior to 2021. See doc. nos. 1-1, 1-2, & 1-3.

and thus the funds should remain with the NEHBPA, rather than be disbursed to the Jockeys' Guild. Molinari further alleges that the NEHBPA "stayed silent" and engaged in a "cover-up" with the Jockeys' Guild and the Gaming Commission, id., ¶ 3, and that "[f]or 3 years the NEHBPA lied to [him] and kicked [him] back and forth with the [Gaming Commission] and the Jockeys [*sic*] Guild to prevent [him] from receiving the funds [he] deserve[s] from the state of Massachusetts," id., ¶ 8. Molinari brings a claim for emotional distress against the NEHBPA.

## Discussion

The NEHBPA moves to dismiss, arguing in part that Molinari has not alleged sufficient facts to make out a claim for either intentional or negligent infliction of emotional distress. The court agrees that Molinari has not set forth facts to make out a plausible claim for relief.

The NEHBPA analyzes Molinari's emotional distress claim under Massachusetts law. Molinari, a New Hampshire resident, does not address which law he believes governs his claim. Because the outcome is the same under New Hampshire and Massachusetts law, the court will apply Massachusetts substantive law without engaging in a choice-of-law analysis. See Steinke v. Sungard Fin. Sys. Inc., 121 F.3d 763, 775 (1st Cir. 1997) (declining to resolve choice-of-law dispute "because the outcome is the same under the substantive law of either jurisdiction" (quotations omitted)).

To state a claim for intentional infliction of emotional distress under Massachusetts law, a complaint must allege:

> (1) that the defendant intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) that the conduct was "extreme and outrageous"; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

Thompson v. Navient Sols., LLC, No. 1:24-CV-12664-IT, 2026 WL 926137, at *4 (D. Mass. Apr. 6, 2026) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)). "'[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987)).[2]

Molinari has not alleged that the NEHBPA engaged in "extreme and outrageous conduct." As the complaint acknowledges, § 60 provides that the Gaming Commission is responsible for authorizing the NEHBPA to distribute RHDF funds to the Jockeys' Guild. Molinari alleges that the Gaming Commission did not do so and that the NEHBPA did not assist him in recovering those funds in later years. The NEHBPA's "alleged failure to help Molinari retroactively obtain RHDF funds for the years during which the Commission failed to authorize disbursements does not, without more, rise to 'the level of shocking malevolence required' to state a claim for intentional infliction of emotional distress." Jockeys' Guild, 2025 WL 2163874, at *6 (quoting Okoli v. Okoli, 81 Mass. App. Ct. 381, 390 (2012)) (dismissing intentional infliction of emotional distress claim against the Jockeys' Guild based on similar allegations).[3]

---

[2] New Hampshire law similarly requires allegations of "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community" to make out a claim for intentional infliction of emotional distress. Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quotations omitted).

[3] Molinari also does not adequately allege that he suffered "severe" emotional distress, as he states only that the NEHBPA's conduct "caused a lot of pain, frustration, humiliation and depression." Doc. no. 1-2 at 2.

Thus, to the extent that Molinari intended to assert a claim for intentional infliction of emotional distress, that claim is dismissed.

Nor has Molinari adequately alleged a claim for negligent infliction of emotional distress. Under Massachusetts law, "the elements of negligent infliction of emotional distress include: '(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.'"[4] Doe v. Trs. of Bos. Coll., 892 F.3d 67, 95 (1st Cir. 2018) (quoting Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171, 181 (1982)). "To state a negligence claim, a plaintiff must show that the defendant owed a duty of care to the plaintiff." Thompson, 2026 WL 926137, at *5. Molinari has not alleged that the NEHBPA owed him any duty such that he could show that the NEHBPA was negligent. As mentioned, the NEHBPA represents owners and trainers of thoroughbred racehorses, not jockeys such as Molinari. Moreover, the statute vests control in the Gaming Commission and does not give the NEHBPA any control over the amount of its RHDF funds that it pays to the Jockeys' Guild. Further, "Molinari has not identified any authority imposing on the [NEHBPA] the duty to demand that the Gaming Commission authorize RHDF distributions. Nor has he alleged that he has suffered a physical harm manifested by objective symptomatology." Jockeys' Guild, 2025 WL 2163874, at *6 (quotations omitted). Therefore, he has not stated a claim for negligent infliction of emotional distress.[5]

---

[4] New Hampshire law similarly requires allegations of "causal negligence of the defendant" to make out a claim for negligent infliction of emotional distress. See Tessier, 162 N.H. at 342.

[5] Because the court grants the NEHBPA's motion to dismiss for the reasons stated, it does not address its additional arguments, including that any claim for emotional distress is time-barred.

Conclusion

For the foregoing reasons, the defendant's motion to dismiss (doc. no. 5) is granted. The clerk of court is directed to enter judgment and close the case.

SO ORDERED.

Samantha D. Elliott
United States District Judge

Dated: September 14, 2026

cc: Counsel of record.